DIVA'S, INC., et al., Plaintiffs,

v.

CITY OF BANGOR, et al., Defendants.

No. 01–CV–108–BS.

United States District Court,
D. Maine.

Dec. 20, 2001.

32

Charles G. Williams, III, Williams Law Firm, P.C., Lewiston, ME, for Divas Inc dba Divas, Diane Cormier–Youngs, plaintiffs.

Mark V Franco, Thompson & Bowie, Portland, ME, Norman S. Heitmann, III, City of Bangor, Legal Department, Bangor, ME, for City of Bangor, defendant.

Mark V. Franco, Lisa Fitzgibbon Bendetson, Thompson & Bowie, Portland, ME, for Michael R. Crowley, Nichi Farnham, Frank Farrington, Gerry GM Palmer, John Rohman, Judith Vardamis, defendants.

## ORDER

SINGAL, District Judge.

This is the latest chapter in the tortured history of litigation between Diva's, Inc., Diva's owner Dianne Cormier–Youngs, and the City of Bangor, Maine. Presently before the Court are Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) (Docket # 30), Plaintiffs' Motion for Partial Summary Judgment (Docket # 31) and Plaintiffs' Motion to Restore Plaintiffs' Motion for Summary Judgment (Docket # 32). For the following reasons, the Court GRANTS Defendants' Motion IN PART and STAYS the remaining proceedings. The Court DENIES Plaintiffs' Motions.

## I. STANDARD OF REVIEW

■■■ In ruling on a motion pursuant to Rule 12(b)(6), the Court accepts a plaintiff's well-pleaded factual averments as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Stein v. Royal Bank of Can.,* 239 F.3d 389, 392 (1st Cir.2001). As part of a plaintiff's complaint, the Court may also consider any documents the authenticity of which the parties do not dispute, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001) (citing *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993)). The Court does not, however, accept a plaintiff's "unsupported conclusions or interpretations of law." *Stein,* 239 F.3d at 392. It will dismiss a complaint only if it appears that the plaintiff cannot recover on any viable theory. *See, e.g., Blackstone Realty LLC v. F.D.I.C.,* 244 F.3d 193, 197 (1st Cir. 2001).

Applying these standards, the Court draws the following facts from Plaintiffs' Complaint, addenda to Defendants' Motion, and portions of the record from earlier stages of this case to which the Complaint sufficiently refers. The Court also takes judicial notice of an action currently pending in Maine District Court involving Plaintiff Diva's, Inc., and Defendant City of Bangor. *See E.I. Du Pont de Nemours & Co. v. Cullen,* 791 F.2d 5, 7 (1st Cir. 1986) (federal court may take notice of proceedings in other courts if they have direct relation to matters at issue); *Metayer v. PFL Life Ins. Co.,* No. CIV. 98–177–P–C, 1999 WL 33117063 at *1 (D.Me. July 15, 1999) (taking judicial notice of case filed in state court, citing *DuPont* ).

## II. BACKGROUND

In various combinations, Plaintiffs and Defendants have been warring since at

least 1998 over the operation of Diva's, a nude entertainment establishment in downtown Bangor, Maine. Plaintiff Diva's, Inc. ("Diva's"), is a Maine corporation. Plaintiff Diane Cormier–Youngs is the owner, president and proprietor of Diva's. Defendants are the City of Bangor (the "City"), the mayor of the City, and some (but not all) of the members of the Bangor City Council.[1]

The Bangor Code (the "Code") regulates the location and operation of adult entertainment establishments in Bangor. Two provisions are particularly relevant to this case: section 228 and section 61–17. Section 228 requires operators of nude entertainment establishments to obtain a "certificate of occupancy" from the City. The City will grant the certificate only if the establishment is not located within five hundred feet of a school, church, public park or residential zoning district, and does not sell alcohol.[2] Similarly (and somewhat redundantly), Section 61–17 prohibits businesses that possess liquor licenses from featuring nude dancing.[3]

1. It is unclear from the pleadings whether Plaintiffs assert claims against the Mayor and City Council members in their official or individual capacities. The Court assumes that both were intended, given the extent to which Plaintiffs and Defendants argue, in their legal memoranda, about the issue of qualified and absolute immunity. *See, e.g., Conner v. Reinhard,* 847 F.2d 384, 394 n. 8 (7th Cir.1988).

2. In relevant part, Section 228 reads:
§ 228–14. Certificate of Occupancy Required.
 D. Location and Standards.
 (1) No certificate of occupancy shall be granted for a commercial establishment offering nude entertainment . . .
 (a) . . . if the premises concerned are located within 500 feet of any other such establishment for which a certificate of occupancy, previously issued, remains in force; any establishment licensed to sell alcohol for on-premises or off-premises consumption under M.R.S.A. 28–A § 601 et seq.; a church, chapel, parish house or other place of worship; or a public library, juvenile shelter or orphanage in existence as of the application date, as measured from the main entrance of the premises to the main entrance of a building by the ordinary course of travel.
 (b) The premises concerned must not be located within 500 feet of the nearest district boundary of any residential zoning district established under the provisions of Chapter 165, Land Development, of the City of Bangor, as measured in a straight line from the premises to the boundary of the zoning district.
 (c) The premises concerned must not be located within 500 feet of the nearest

property line of any public or private school, school dormitory, or school ground, public playground or City of Bangor public park, as measured in a straight line from the premises to the property line . . .
§ 228–15. Conduct.
 C. No alcoholic beverages shall be sold, served or given away on the premises of any commercial establishment offering nude entertainment, whether for on-premises or off-premises consumption. Operators of any such establishment shall not allow customers or patrons to bring or consume alcoholic beverages on the premises.
Bangor Code, § 228–14(D)(1); 15(C).

3. In relevant part, section 61–17 reads:
Chapter 61 Alcohol and Entertainment
 C. Live entertainment regulated.
 (1) No licensee shall permit entertainment on the licensed premises, whether provided by professional entertainer(s), employees of the licensed premises or any person, when the entertainment involves:
 (a) The performance of acts or simulated acts of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law.
 (b) The actual or simulated touching, caressing or fondling on the breasts, buttocks, anus or genitals.
 (c) The actual or simulated displaying of the genitals, pubic hair, buttocks, anus or any portion of the female breasts at or below the areola area thereof.
 (d) The permitting by any licensee of any person to remain in or upon the licensed premises who exposes to any public view any portion of his or her genitals or anus.

Diva's opened as a topless female dancing establishment and juice bar in 1996.[4] In 1999, the City amended section 228 of the Code to add, among other things, the provision barring nude entertainment establishments from locating within five hundred feet of churches. Because Diva's neighbors a church, the amended section 228 impacted squarely upon its ability to obtain or renew a certificate of occupancy. The club challenged the ordinance in state court, lost, and appealed. *See Diva's, Inc. v. City of Bangor,* Docket No. AP–99–32 (Penobscot Sup.Ct.).

Before the appeal was decided, the parties entered into a written settlement agreement. The agreement contained a Faustian bargain. By agreeing to withdraw the appeal and never to challenge the Code's constitutionality or validity, Diva's obtained the right to continue operating as a nude dancing establishment (in violation of the Code)—but *only* until May 31, 2001. After that date, Diva's agreed to cease "commercial display of nudity" for good at its current location.

As the May 31, 2001 deadline approached, Diva's made efforts to revamp its operations. Anticipating a new format, it applied for a "special amusement permit" from the City to allow the club to feature dancers who would be clad in bikinis (in lieu of appearing topless). It also applied for a liquor license. On May 30, 2001, the City Council granted the license but denied the permit, effectively foreclosing Diva's ability to feature exotic dancing of any variety. In denying the permit, the City explained that despite Cormier–Youngs's assurances to the contrary, it was concerned that the "bikini lounge" would soon revert to a nude dancing establishment in violation of sections 61–17 and

228, and that granting the permit would negatively affect public health, safety and welfare.

In response, Diva's and Cormier–Youngs filed a federal lawsuit against the City, alleging that the City Council's decision had violated their constitutional rights in violation of 42 U.S.C. § 1983. In particular, they alleged that the Council's denial of a permit limited their First Amendment right to free expression, and their Fourteenth Amendment rights to due process and equal protection of the laws. In conjunction with the filing, Diva's and Cormier–Youngs filed two motions for a temporary restraining order ("TRO"), which the Court denied, citing the movants' inability to demonstrate a likelihood of success on the merits of the claims. (*See* Order Denying Petition for Temporary Restraining Order (Docket # 5)).

Three weeks later, while a third motion for a TRO was pending before the Court, the Bangor Board of Appeals reversed the City Council's decision and granted the permit for the "bikini lounge," appearing to put an end to the controversy, if not the litigation. The Court accordingly denied the renewed petition for TRO as moot. (*See* Order Finding Moot Plaintiffs' Renewed Petition for Temporary Restraining Order (Docket # 12)). The period of détente was short-lived, however. Before long, Diva's began featuring topless dancing anew.

The City immediately filed a civil enforcement action against Diva's in Maine District Court for violating Code sections 61–17 and 228. *See City of Bangor v. Diva's, Inc.,* No. BAN 01 CV 311 (Me. Dist. Ct. June 29, 2001). Diva's moved to dismiss, arguing that the Code sections

---

Bangor Code, § 61–17(C)(1).

4. It is not clear from the record when or if Diva's obtained a certificate of occupancy pursuant to section 228.

violated the federal constitution. On August 29, 2001, the state court denied Diva's motion, explicitly finding that section 228 of the Code passed constitutional muster. The state court did not rule on the constitutionality of section 61–17. *See City of Bangor v. Diva's, Inc.,* No. BAN 01 CV 311 (Me.Dist.Ct. Aug. 29, 2001) (decision and order).

In the interim, Diva's and Cormier–Youngs had filed yet a fourth petition for a TRO in this Court. The Court denied the request, explaining that principles of comity counseled against interfering with matters then pending in state court. *(See* Order Denying Plaintiffs' Renewed Motion for Temporary Restraining Order (Docket # 19)). Several weeks later, Diva's and Cormier–Youngs amended their federal Complaint to include the individual Defendants, all of whom had voted against issuing the special amusement permit. The amendment also added (1) a facial challenge to the constitutionality of section 61–17, (Count One),[5] (2) a state law breach of contract claim alleging that the City had violated the 1999 agreement by denying the permit, (Count Two), (3) a claim alleging tortious interference with Diva's and Cormier–Youngs's ability to contract with "talent, support staff and vendors," (Count Three), (4) an allegation that the individual Defendants had conspired to violate Diva's and Cormier–Youngs's constitutional rights in violation of 42 U.S.C. § 1985, (Count Four), and finally (5) an intentional infliction of emotional distress claim on behalf of Cormier–Youngs individually, (Count Five).[6] They requested monetary, declarative, punitive and injunctive relief.

It is the legal sufficiency of this Amended Complaint that is now before the Court. On September 7, 2001, the City and individual Defendants filed a Motion to Dismiss that detailed a variety of constitutional, statutory and procedural defects in the Amended Complaint. Diva's and Cormier–Youngs's reply filings addressed only some of the objections, but sought further relief from the Court by requesting partial summary judgment as to an issue of fact not yet part of the record. Diva's and Cormier–Youngs also moved to restore a motion for summary judgment that they had already filed and withdrawn in conjunction with an earlier version of the Complaint.

Meanwhile, back in state court, the trial convened, and Diva's continued to contest the constitutionality of both Code sections. Three weeks after the close of testimony, the City filed a trial brief that, in part, addressed the merits of Diva's constitutional challenges. Diva's responded by filing a motion for judgment as a matter of law, once again asserting its constitutional claims, and a motion for a permanent injunction, making the same claims yet again. Both of those motions are currently pending before the state court.

## III. MOTION TO DISMISS

Before reaching the issues of comity raised by the ongoing proceedings in state court, the Court addresses several of Defendants' substantive objections to Plaintiffs' Complaint.

### A. Breach of Contract Claim

█ Count Two of the Complaint alleges that by denying Plaintiffs a permit to

---

5. Plaintiffs lumped two distinct claims together in Count One—a facial constitutional challenge and a section 1983 claim. Throughout the rest of this Order, the Court refers to "portions" of Count One for clarity.

6. What the Court refers to as "Count Five" is actually mislabeled as a second "Count Four" in Plaintiffs' Complaint.

feature dancers clad in bikinis, the Defendants breached the 1999 settlement agreement. The Court finds this allegation somewhat perplexing. The agreement, by its plain language, only addresses the practice of nude dancing at Diva's. *See, e.g., Villas by the Sea Owner's Ass'n v. Garrity,* 748 A.2d 457, 461 (Me.2000) (unambiguous contract given its plain, ordinary and generally accepted meaning). It does not govern Diva's right to feature other forms of dancing, or the City's responsibilities in reviewing permit requests by Diva's in that regard. Nor does it contain, as Plaintiffs suggest, a general duty on the part of the City "not to frustrate, retard, or disallow the plaintiff's [sic] ability to practice her [sic] art form." *(See* Plaintiffs Second Amended Complaint, ¶ 19 (Docket # 27).)[7] The settlement agreement is inapposite to the permit denial at issue in all respects, and Count Two must therefore be dismissed.

## B. Tort Claims

◼ Counts Three and Five of Plaintiffs' Complaint allege state tort law actions arising from Defendants' denial of Plaintiffs' permit request. The Maine Tort Claims Act bars tort actions against city government and its employees arising from a quasi-judicial act taken by a government official. *See* 14 M.R.S.A. § 8104-B(2), 8111(1)(B). Denying Plaintiffs' request for a special amusement permit was a quasi-judicial act as defined in the statute. *Id.* (listing "refusal to grant ... any license [or] permit" as a quasi-judicial act). Therefore, Defendants enjoy sovereign immunity from Counts Three and Five of

Plaintiffs' Complaint, and those Counts must be dismissed. *See Ellis v. Meade,* 887 F.Supp. 324, 330 n. 7 (D.Me.1995) (noting that the Maine Tort Claims Act is the statutory reformulation of the doctrine of sovereign immunity).

## C. § 1985 Claim

◼ Count Four of Plaintiffs' Complaint alleges that the individual Defendants conspired to violate Plaintiffs' constitutional rights, in violation of 42 U.S.C. § 1985(3). To state a claim under section 1985(3) a plaintiff must allege the existence of (1) a conspiracy; (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). In *Griffin,* the Supreme Court also effectively added a fifth element to the analysis by construing "equal protection" and "equal privileges and immunities" to mean that a plaintiff must demonstrate "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" on the part of the conspirators. *Id.*

◼ Plaintiffs fail to state class-based animus on the part of Defendants, and indeed, the Court does not perceive any class into which the Plaintiffs might fall. For the purposes of section 1985 claims, a class of persons must be a "distinctive and

7. If anything, the agreement appears to foreclose Diva's ability to pursue their constitutional line of argument in this case and in Maine District Court. It reads "[Diva's and Cormier–Youngs] shall not now, or in the future, file, in any forum, any challenge to the constitutionality or validity of the Ordinance, or any part thereof...." *(See* Defendant's Motion to Dismiss, ex. 2 (Docket # 30).) However, due to the *Younger* abstention principles discussed in part III of this Order, the Court does not address that issue.

identifiable" group, separate from the fact that it comprises persons who "bear the brunt of the same tortious behavior." *Id.* at 5. Thus, even if Plaintiffs had claimed that they belonged to a class of purveyors of adult entertainment for 1985(3) purposes, that class would be fatally indeterminate in that it is, at best, a "vague and amorphous" grouping of individuals. *See, e.g., Redner v. Citrus County,* 710 F.Supp. 318, 322 (M.D.Fla.1989) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 836, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)) (finding that a class comprised of "practitioners of nude dance or adult entertainment" is insufficient, as a matter of law, as a foundation of a section 1985(3) action). Plaintiffs' have failed to make even that allegation, however, and their section 1985(3) claim must be dismissed.

### D. Individual Defendants in Their Individual Capacities

Insofar as Plaintiffs allege that the individual Defendants are liable in their individual capacities under the section 1983 portion of Count One, the Court again disagrees. In so finding, the Court adopts the reasoning of the district court in *B Street Commons, Inc. v. Bd. of County Comm'rs,* 835 F.Supp. 1266, 1270–71 (D.Colo.1993), a case remarkably similar to the present one. In *B Street,* county commissioners voted to deny a special use permit for a nude entertainment establishment, citing a local adult entertainment ordinance that was later declared unconstitutional. The plaintiffs, would-be owners of the establishments, sued the county board of commissioners in their individual capacities under 42 U.S.C. § 1983. The district court dismissed the case as to the individual commissioners, explaining that they were absolutely *and* qualifiedly immune from suit. *Id.* Absolute immunity attached to the commissioners because, in

making a permitting decision, they had engaged in a quasi-judicial act. *Id.* Qualified immunity applied because their actions were not such that a reasonable official would have known he was violating a clearly established right. *B Street,* 835 F.Supp. at 1271 (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ This case is nearly identical, in that the permitting decision bore all of the hallmarks of a quasi-judicial act under the case law of this circuit. *See Bettencourt v. Bd. of Registration in Med.,* 904 F.2d 772, 784 n. 15 (1st Cir.1990) (listing factors that indicate quasi-judicial act). First, the individual Defendants in this case engaged in adjudicatory functions by taking testimony, making credibility determinations, and applying the applicable law to the factual determination they had made. *Id.* Second, Plaintiffs enjoyed the procedural protection of the appeals process in this case, and took advantage of it by successfully appealing the City Council's decision to the Board of Appeals. *Id.* Third and finally, the danger of vexatious litigation would result if Courts were to extend individual liability to city council members making decisions such as the one Defendants made. *Id.* The Court notes also that, as mentioned above, the Maine Tort Claims Act defines "quasi-judicial acts" to include the refusal to grant a permit. 14 M.R.S.A. § 8104–B(2), 8111(1)(B). Because the decision was a quasi-judicial act, therefore, the individual actors are absolutely immune from suit under section 1983. *Id.* at 782.

■ Even assuming that absolute immunity did not apply to the individual Defendants, they nonetheless enjoyed qualified immunity. In contrast to absolute immunity, local government officials are entitled to limited, or qualified, immu-

nity in performing discretionary functions provided their actions "did not violate clearly established statutory or constitutional rights about which a reasonable person would have known." *B Street*, 835 F.Supp. at 1271 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Individuals may retain qualified immunity, as in *B Street*, even if a court later determines that their actions violated the constitution. *Id.; Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir.1998).

 The question is, therefore, whether a reasonable person in the individual Defendants' shoes would have known he was violating a clearly established statutory or constitutional right by denying Plaintiffs' permit application. The answer is undoubtedly "no." Indeed, the only court to have expressly addressed the constitutionality of the ordinances so far found that they are constitutional. *See See City of Bangor v. Diva's, Inc.*, No. BAN 01 CV 311 (Me.Dist.Ct. Aug. 29, 2001) (decision and order). If a court of law finds that a statute is constitutional, then Plaintiffs cannot successfully contend that a reasonable layman should have thought otherwise. The Defendants in their individual capacities are therefore qualifiedly immune as well, and they must be dismissed as Defendants from Count One. Defendants remain liable in their official capacities as to that Count. *See, e.g., Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 91 (1st Cir.1994).

### E. Plaintiff Diane Cormier–Youngs

 Defendants argue that Cormier–Youngs should be dismissed from the action entirely for lack of standing. The Court agrees, because the sole remaining Count, Count One, asserts harms arising from the denial of a permit to Diva's, Inc. Cormier–Youngs, although the owner and president of Diva's, Inc., is not entitled to press a section 1983 claim in her *personal* capacity arising from an alleged constitutional harm visited upon the corporation, without alleging a separate harm to herself personally. *See Erlich v. Glasner*, 418 F.2d 226, 227 (9th Cir.1969) (shareholder may not maintain action under Civil Rights Act for damages suffered by corporation); *see also Potthoff v. Morin*, 245 F.3d 710, 714 (8th Cir.2001) (citing *Erlich*). Because she has failed to allege any injury flowing to her personally from the permit denial, Cormier–Youngs must be dismissed as a Plaintiff from Count One's section 1983 claim.

## III. ABSTENTION

Count One, a facial constitutional challenge to Code section 61–17 and a section 1983 action against the City and the individual Defendants in their official capacities, is the only Count remaining alive in this action. Although the parties have not raised them, two doctrines of federal abstention are apposite to these remaining claims. The Court addresses them sua sponte. *See Cruz v. Melecio*, 204 F.3d 14, 22 n. 7 (1st Cir.2000).

### A. *Younger* Abstention

 Principles of comity dictate that federal courts should abstain from enjoining enforcement of, or otherwise ruling upon the constitutionality of a state statute when there is an ongoing state proceeding to enforce the statute against the party seeking injunctive relief. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (relying upon *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). *Huffman* acknowledged only two limited exceptions to the *Younger* doctrine: federal courts are not required to abstain where there is a showing that the state court

proceeding is motivated by a desire to harass or is conducted in bad faith, *see id.* at 611, 95 S.Ct. 1200, or where the state court proceedings seek to enforce legislation that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whether manner and against whomever an effort might be made to apply it." *Id.*

■ Count One of Plaintiffs' Complaint challenges the constitutionality of section 61–17 of the Code and seeks injunctive relief. At present, the City of Bangor is seeking to enforce that same ordinance against Plaintiff Diva's in Maine District Court. *See City of Bangor v. Diva's, Inc.,* No. BAN–01–CV–311 (Me. Dist. Ct. June 29, 2001). Plaintiffs have failed to allege that the state action is motivated by bad faith, and the plain language of the ordinance belies any suggestion that it is "patently violative of express constitutional prohibitions." *Cf. New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 365, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (explaining that mere facial constitutional challenge will not alone compel the exercise of federal jurisdiction); *Hood v. Comm'r of Agric., Food and Rural Res.,* 764 F.Supp. 662, 672–74 (D.Me.1991) (declining to find that state milk laws meet the "exceedingly tough" second *Younger* exception standard). Thus, the Court will not address Plaintiffs' facial constitutional challenge to section 61–17.

■ By the same token, the Court leaves to the state court the collateral issue of whether Plaintiffs even have the right to challenge the Code's constitutionality. It appears that the terms of the 1999 settlement agreement forbid Plaintiffs from challenging the Code's constitu-

tionality at any time. Nonetheless, the same principles of comity that counsel against resolving Plaintiffs' facial constitutional challenge also apply to Defendants' ability to interpose the contract as a response. The Court will not interfere with the state courts' resolution of those issues.

### B. *Colorado River* Abstention

■ Even though the Court leaves the issue of the constitutionality of section 61–17 (and by extension, section 228) to the state courts, it still must resolve Plaintiff's [8] 1983 claim attacking the propriety of the City Council's denial of its permit application. However, in denying the application, Defendants relied implicitly upon the constitutionality of the Code sections now under review by the state court. Thus, the resolution of the matters remaining before *this* Court depends upon the final outcome of the state court proceedings. *Cf. Huffman,* 420 U.S. at 605–06, 95 S.Ct. 1200 (discussing the application of *Younger* abstention to civil proceedings).

■ The Supreme Court's holding in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), gives federal courts the authority to stay their hand in this type of situation. In *Colorado River,* the Court held that in certain "exceptional circumstances" where litigation in federal court threatens to be duplicative of ongoing litigation in state court involving the same or similar parties, a federal court has the discretion to abstain from ruling. *Id.* at 817, 96 S.Ct. 1236. This power should be used sparingly and only after balancing a number of factors against the Court's preference for exercising jurisdiction. *Elmendorf Grafica, Inc. v. D.S.*

---

8. Because the Court has dismissed Plaintiff Cormier–Youngs from the section 1983 action, and has dismissed the facial constitu-

tional challenge, it refers only to the single "Plaintiff," Divas, Inc., for the remainder of this Order.

*Am. (East), Inc.*, 48 F.3d 46, 50 (1st Cir. 1995). There are seven factors that courts in this Circuit generally consider: (1) whether either the state or federal court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' rights; and (7) the vexatious or reactive nature of the federal lawsuit.[9] *Id.*

◼ The first two factors named above are inapposite to this case. The third, however, weighs in favor of the Court abstaining. If the Court ruled in advance of the final resolution of the state proceedings, then it would merely be guessing at the state court outcome, and would risk having to revisit any inconsistent decision. The fourth factor appears to cut in the opposite direction, insofar as the Court obtained jurisdiction over this matter before the City filed its civil enforcement action in Maine District Court. However, "[p]riority in this factor should not be measured solely based on which complaint was filed first." *Arroyo v. K–Mart Inc.*, 24 F.Supp.2d 169, 173 (citing *Moses H. Cone*, 460 U.S. at 21–22, 103 S.Ct. 927). Rather, the Court should give preference to the court that has made more progress in its adjudication of the matter. *Id.* The state court clearly prevails in this regard, since it is already in its post-trial stage.

The fifth and sixth factors are not particularly helpful in resolving this issue because there is no common legal question that faces both courts. Rather, the issue is only whether it is unwise for the Court to rule in advance of the outcome of the pending state proceedings. Perhaps most important, however, the seventh factor strongly favors abstention, in that Plaintiff's case smacks of vexatious, reactive litigation. *Cf. N. Am. Boxing Org. Intercont'l, Inc. v. N. Am. Boxing Org., Inc.*, 40 F.Supp.2d 55, 61 (D.P.R.1999) (seventh factor the "most important" factor in determining whether court should abstain in that particular case). Plaintiff's lawsuit in federal court seeks to vindicate what, at very worst, would be the slimmest of constitutional slights. After all, Plaintiff ultimately obtained the permit it was seeking from the City. Indeed, in ruling on a motion prior to Plaintiff's filing of the Amended Complaint that is the subject of this Order, the Court doubted whether Plaintiff had suffered *any* constitutional injury. (*See* Order Denying Plaintiff's Petition for Temporary Restraining Order (Docket # 5)). Moreover, Plaintiff amended its Complaint only after the City brought its civil enforcement action, and raised similar, if not identical, issues before both courts simultaneously.

Weighing each of these factors against the heavy presumption of assuming jurisdiction, the Court finds that the claims in this case specifically arising out of the permit denial will best be resolved after the constitutional issues raised by Diva's in the state courts are resolved. Thus a stay of the section 1983 portion of Count One is appropriate. *See generally Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (permitting courts to stay proceedings on *Colorado River* abstention grounds).

## IV. MOTIONS FOR SUMMARY JUDGMENT

The Court declines to entertain Plaintiffs' Motion for Partial Summary Judg-

---

**9.** The seventh factor has gained acceptance in the First Circuit, although it was not originally a factor enumerated by the Supreme Court. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Grafica*, 48 F.3d at 50.

ment, and Plaintiffs' Motion to Restore Plaintiffs' Motion for Summary Judgment. In failing to file a statement of material facts in issue, and to place the facts upon which it relies on the record, Plaintiff has failed to comply with even the most basic local rules of court in presenting its motions. *See* D. ME. R. 56. Denial of those motions is therefore appropriate. *See Archer v. Town of Houlton*, No. 00–244–B–H, 2001 WL 1057708 at *8 (D.Me. Sept.12, 2001).

## V. RULE 11 SANCTIONS

As a final matter, Defendants have requested that the Court impose Rule 11 sanctions against Plaintiff Diva's and former Plaintiff Cormier–Youngs for their breaches of procedural protocol. *See* Fed R. Civ. P. 11.[10] The Court declines to do so but gives the following warning. While the old legal saw tells us that hard cases make bad law, it is also true that poorly pleaded cases make no law at all. Through a flurry of ill-advised, duplicative and error-filled filings, Plaintiff and former Plaintiff have succeeding only in wasting their own, the Court's and Defendants' valuable time and resources. In the future, the Court will not tolerate such a scattershot approach to litigation.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion IN PART. The Court DISMISSES Counts Two, Three, Four and Five, and Count One to the extent that it raises a facial constitutional challenge to Bangor Code section 61–17, WITH PREJUDICE. The Court DISMISSES Defendants in their individual capacities from Count One to the extent

it asserts a violation of 42 U.S.C. § 1983, WITH PREJUDICE. The Court DISMISSES Diane Cormier–Youngs as a Plaintiff in Count One to the extent it asserts a violation of 42 U.S.C. § 1983, WITHOUT PREJUDICE. The Court DENIES Plaintiff's summary judgment motions. Finally, the Court STAYS Count One to the extent it asserts a violation of 42 U.S.C. § 1983 against the City and the individual Defendants in their official capacities, pending the final resolution of *City of Bangor v. Divas, Inc.*, No. BAN 01 CV 311 (Me. Dist. Ct. June 29, 2001), in Maine state court. The Court further ORDERS Plaintiff to notify the Court within five days of the final resolution of the state court matter.

SO ORDERED.

---

10. Ironically, Defendants' request for sanctions is, itself, procedurally infirm. The Rule requires that any request for sanctions "be made separately from other motions or requests . . .," yet Defendants' motion is contained *within* a reply memorandum to one of Plaintiff's motions.