King's Grant Inn v. Gilford, et al.   CV-03-249-SM   02/16/05
                        UNITED STATES DISTRICT COURT

                           DISTRICT OF NEW HAMPSHIRE


King's Grant Inn,
        Plaintiff

        v.                                    Civil No. 03-249-SM
                                              Opinion No. 2005 DNH 022
Town of Gilford; and
Gilford Board of Selectmen,
        Defendants


                              **O R D E R**


        Defendants have filed a responsive memorandum designed to

show cause why the Town of Gilford's policy regulating exotic

dancing is not facially unconstitutional as a prior restraint on

protected speech, and arguing why the individual defendants are

entitled to qualified immunity from liability if the policy is

unconstitutional.  Plaintiff objects.


              **Constitutionality of the Exotic Dancing Policy**

        The Town's policy with respect to issuing permits for exotic

dancing is facially unconstitutional as an invalid prior

restraint on speech protected by the First Amendment.  The key

issue, as defendants recognize, is the degree of discretion

placed in the hands of the Board of Selectmen.

The Gilford exotic dancing policy places discretion in the hands of government officials at least as broad as that found unconstitutional in Fly Fish, Inc. v. City of Cocoa Beach, 337 F.3d 1301 (11th Cir. 2003). In Fly Fish, the court noted:

> Ordinance 1204 provides that the City may deny an applicant a license [for adult entertainment] if "the granting of the application would violate either a statute or ordinance or an order from a Court of law that effectively prohibits the applicant from obtaining an adult entertainment establishment license," or if the applicant fails to comply with Florida law regarding corporations, partnerships, or fictitious names.

Id. at 1312 (citation omitted). Here, the relevant and comparable portion of the Gilford policy provides:

> (3) The town shall grant or conditionally deny authorization to provide exotic dancing or other types of unusual entertainment based upon:
>
> . . .
>
> > (e) Whether the licensee or the proposed performers have a significant history of violating alcoholic beverage control laws or laws relating to public performances in any jurisdiction in the United States, or whether the licensee and the proposed performers may not otherwise be relied upon to comply fully with all state, federal and local laws, ordinances, and rules with regard to their activities in promoting or providing the proposed entertainment.

2

(Def.'s Mem., Ex. 1 at 4.)  If it "exceeds the limits of permissible 'ministerial discretion,'" <u>Fly Fish</u>, 337 F.3d at 1313, to allow a licensing authority to determine whether a statute, ordinance, or court order would be violated by the granting of a license application, which might ordinarily appear to be a relatively straightforward and objective yes-or-no proposition, then it necessarily follows that an entertainment licensing decision cannot rest upon a public official' subjective sense of what constitutes a significant as opposed to an insignificant history of liquor law violations.  The discretion involved in making such decisions is essentially unguided under the policy, and the range is too broad - one selectman's "significant history" will be insignificant to another, and no objective standard is articulated by which either perception can be fairly or consistently measured.

Among other things, the policy provides no guidance as to how many violations, over what period of time, and of what character, will constitute a "significant history."  Some liquor law violations are comparatively minor, of course, and others are decidedly major; some are substantive (selling to minors) while

3

others are administrative (record keeping).[1]  Absent objective criteria, it is impossible for a licensee to know what is required, or how long it must wait after a violation, or violations, before it will, if ever, qualify again for a permit.

Defendants' own memorandum makes the case against constitutionality of the policy: "Two of the three members of the [Board of Selectmen] deemed this record to be a 'significant' record of alcohol violations within the meaning of the Town Policy . . . ."  (Def.'s Mem. at 3.)  The fact that two selectmen deemed the Inn's history of liquor law violations to be "significant" while the third selectman deemed that history not to be "significant" demonstrates the subjective and discretionary character of the policy's permit-qualifying standard.  Even more troubling, but seemingly not at issue in this case, is that part of the policy calling upon selectmen to predict whether an applicant can be "relied upon to comply fully with all state, federal and local laws, ordinances, and rules with regard to

---

[1] Such guidance would seem especially important in a case such as this, where the violations at issue range rather widely, from serving an intoxicated person and allowing an underage person to possess and/or consume alcoholic beverages, on the one hand, to advertizing special drink prices and failing to attend an educational seminar, on the other.

4

their activities in promoting or providing the proposed entertainment." Basing licensing decisions on speculation of the sort invited by that provision is inconsistent with the obligation to provide a "narrow, objective, and definite standard[]." <u>Fly Fish</u>, 337 F.3d at 1313 (quoting <u>Shuttlesworth v. Birmingham</u>, 394 U.S. 147, 151 (1969); citing <u>Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 757 (1988)).

Defendants have not shown cause why the Town's exotic dancing policy is not unconstitutional as an invalid prior restraint on speech protected by the First Amendment. King's Grant Inn is entitled to judgment as a matter of law on Count I of its complaint, and on its petition for declaratory judgment, to the extent the petition seeks to have the exotic dancing policy declared facially unconstitutional. Because the policy is found to be facially unconstitutional, Count II, King's Grant Inn's as-applied challenge, is moot.

## Qualified Immunity

Defendants argue that even if the Town's exotic dancing policy is unconstitutional, the individual members of the Board

5

of Selectmen are entitled to qualified immunity from liability for enforcing it.  King's Grant Inn counters, summarily, that "a reasonable person would know that denial of permits for exotic dancing based upon personal beliefs and not on a consistent objective application of Town Policy is unlawful."  (Pl.'s Obj. to Summ. J. at 13.)

At first blush, this dispute would seem to be covered by the doctrine of quasi-judicial immunity.  See Destek Group, Inc. v. N.H. Pub. Util. Comm'n, 318 F.3d 32, 40-41 (1st Cir. 2003).  But defendants do not raise that defense, perhaps out of concern that their argument for the constitutionality of the exotic dancing policy would be undermined by a simultaneous claim that selectmen exercise quasi-judicial discretion when ruling on permit applications.  In any event, the apparent lack of an appeal process available to those seeking to challenge decisions made by the selectmen distinguishes this case from Diva's, Inc. v. City of Bangor, 176 F. Supp. 2d 30, 38 (D. Me. 2001) (granting individual city council members both absolute quasi-judicial immunity and qualified immunity), and might well be fatal to a claim of quasi-judicial immunity under the three-part test

6

established in <u>Bettencourt v. Board of Registration in Medicine</u>, 904 F.2d 772, 783 (1st Cir. 1990).

Turning to qualified immunity – a defense that protects "government officials performing discretionary functions," <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987) – the court must

> consider a sequence of questions: (1) whether the facts as alleged make out a constitutional violation; (2) whether that right was clearly established; and (3) whether a similarly situated reasonable official would have understood that her conduct violated clearly established law.

<u>Fabiano v. Hopkins</u>, 352 F.3d 447, 453 (1st Cir. 2003) (citing <u>Savard v. Rhode Island</u>, 338 F.3d 23, 27 (1st Cir. 2003)). As a general matter, "[q]ualified immunity is intended to shield public officials 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" <u>Fabiano</u>, 352 F.3d at 452-53 (quoting <u>Anderson</u>, 483 U.S. at 638). The doctrine of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." <u>Cox v. Hainey</u>, 391 F.3d 25, 31 (1st Cir. 2004) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). It is unavailable only when a

7

government official violates a clearly established constitutional right under circumstances in which a reasonable official would have recognized the violation.

Here, it has been established that King's Grant Inn suffered a violation of its First Amendment rights when it was denied a permit under a facially unconstitutional policy.

Under the second factor, the question is "whether the constitutional right . . . was 'clearly established' at the time of the incident such that it would 'be clear to a reasonable [official] that his [or her] conduct was unlawful in the situation he [or she] encountered.'" Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 65 (1st Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Moreover, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Riverdale Mills, 392 F.3d at 55 (quoting Anderson, 483 U.S. at 639-40).

When the Gilford Board of Selectmen denied the Inn's permit applications, in April, May, and June of 2003, it was clearly established by the Supreme Court that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." Fly Fish, 337 F.3d at 1313 (quoting Shuttlesworth, 394 U.S. at 150-151), and it was clearly established, as well, that exotic dancing of the sort presented at King's Grant Inn is entitled to protection under the First Amendment. See Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66 (1991). (That such dancing approaches "the outer perimeters of the First Amendment," id. at 566, or is only "marginally" within the boundaries of the protection afforded under the First Amendment, is, of course, immaterial to whether exotic dancing is entitled to protection; it is.)

The general principle stated in Shuttlesworth, however, is too abstract for useful application in considering qualified immunity. See Riverdale Mills, 392 F.3d at 66 ("The district court below erred by posing the second prong as whether 'the law regarding the necessity for a search warrant is clear.'").

9

Rather, the proper question here is whether a local government official, in April, May, and June of 2003, should have understood, based on established law, that it was unlawful to deny a request for an exotic dancing permit based upon the applicant's having a "significant history" of violating alcoholic beverage control laws. See id. ("The proper question is whether an officer on October 21, 1997, should have understood based on prior law that it was unlawful, without a warrant or consent, to take industrial wastewater from underneath a manhole cover on a privately-owned street, but headed irretrievably to a public sewer 300 feet away.").

When the constitutional right at issue here is properly cast, it becomes apparent that the right was not clearly established. The selectmen made their permit decisions pursuant to an ordinance that had not, to that point, been challenged on constitutional grounds. And, the ordinance was adopted pursuant to the implicit mandate of a state statute, requiring that holders of liquor licenses may "provide entertainment and dancing . . . provided they have received written authorization by the town or city." N.H. Rev. Stat. Ann. § 179:19. At the time the

10

individual defendants denied plaintiff's permit applications, no decisional law was in place describing the permissible bases on which written authorization for entertainment and dancing in establishments licensed to serve liquor might, constitutionally, be either granted or withheld.

Moreover, neither the Court of Appeals for the First Circuit nor the United States Supreme Court has resolved a case sufficiently similar to this one to provide clear notice that defendants' denial of plaintiff's permit applications amounted to a denial of First Amendment rights. The general principle established in Shuttlesworth was applied, by the Eleventh Circuit, in a somewhat similar factual setting, as described earlier. But, it is not at all clear that the opinion in Fly Fish, constitutes "a consensus of persuasive authority elsewhere," Savard, 338 F.3d at 28 (citing Wilson v. Layne, 526 U.A. 603, 617 (1999); Brady v. Dill, 187 F.3d 104, 116 (1st Cir. 1999)). It cannot be said, then, that the constitutional right at issue here, properly framed, was clearly established in federal decisional law. Finally, the third permit denial (on June 2, 2003) took place after the New Hampshire Superior Court

11

had held that the Inn was not likely to succeed on the merits of its First Amendment claim. At the very least, then, on that occasion, defendants' reliance on the decision of the New Hampshire Superior Court, particularly given the absence of specific federal precedent, was not unreasonable, and did not result in forfeiture of their qualified immunity.

Because the contours of the legal right defendants violated were not clearly established at the time they acted, the individual defendants are entitled to qualified immunity from personal liability, and they are entitled to partial summary judgment on that point.

## Conclusion

For the reasons given, King's Grant Inn is entitled to summary judgment as to liability on Count I, its facial challenge to the Gilford exotic dancing policy, but the individual defendants are entitled to summary judgment on their qualified immunity defenses. (As noted, Count II, the as-applied challenge to the policy is moot.) Accordingly, all that remains is the question of damages. The case shall continue on track for trial

12

for the limited purpose of establishing the damages, if any, to which King's Grant Inn is entitled.

      **SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 16, 2005

cc:  David H. Bownes, Esq.
     R. Matthew Cairns, Esq.

13