# United States Court of Appeals
## For the First Circuit

No. 13-2412

PUERTO RICO DAIRY FARMERS ASSOCIATION,

Intervenor, Appellant,

SUIZA DAIRY, INC.; VAQUERÍA TRES MONJITAS, INC.,

Plaintiffs, Appellees,

v.

MYRNA COMAS PAGAN, Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico; EDMUNDO ROSALY, Administrator of the Office of the Milk Industry Regulatory Administration for the Commonwealth of Puerto Rico,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

William A. Graffam, with whom Alejandro Mendez Roman and Jiménez Graffam & Lausell were on brief, for appellant.

Rafael Escalera Rodríguez, with whom Amelia Caicedo Santiago, Carlos M. Hernández Burgos, and Reichard & Escalera were on brief, for appellee Suiza Dairy, Inc.

Jose R. Lazaro Paoli, Enrique Nassar Rizek and ENR & Associates on brief for appellee Vaquería Tres Monjitas, Inc.

April 3, 2014

**LYNCH, Chief Judge**. This appeal arises from the settlement of the decade-long litigation concerning the regulation of Puerto Rico's milk industry. The intervenor Puerto Rico Dairy Farmers Association ("PRDFA") appeals from the district court's approval of a comprehensive Settlement Agreement ("the Agreement") reached by the original parties: the government defendants, including the Office of the Milk Industry Regulatory Administration for the Commonwealth of Puerto Rico (Spanish acronym "ORIL"), and the plaintiff milk processors, Vaquería Tres Monjitas, Inc. ("VTM") and Suiza Dairy, Inc. ("Suiza").

PRDFA argues that the district court denied it an appropriate hearing to object to the approval of the Agreement, and attacks the merits of the Agreement itself. Because PRDFA had an adequate hearing to air its grievances while the Agreement was stayed from going into effect, and because the district court held that PRDFA remains free to challenge in its still-pending companion case the constitutionality of the Agreement as implemented, we reject PRDFA's due process arguments. We also find there was no abuse of discretion in the district court's approval of the Agreement, and affirm.

I.

An account of the litigation's origins is found in our previous opinion in this case. See Vaquería Tres Monjitas, Inc. v.

Irizarry, 587 F.3d 464 (1st Cir. 2009), reh'g en banc denied, 600 F.3d 1 (1st Cir. 2010), cert. denied, 131 S. Ct. 2441 (2011).

The milk industry is heavily regulated in Puerto Rico, and is under the purview of ORIL, a subdivision of the Department of Agriculture. Id. at 467. Before this case began, ORIL set both a maximum price for milk sold to consumers and a minimum price for the processors' purchase of raw milk from the dairy farmers, effectively squeezing the processors' profit margins between the two ends of the market. Id. at 469.

VTM and Suiza are the only private fresh milk processors in Puerto Rico. They purchase "raw milk" from local dairy farmers, convert it to drinkable "fresh milk," and sell it to consumers. Id. at 468. The only other milk processor is Industria Lechera de Puerto Rico, Inc. ("Indulac"), an entity created by statute to promote the Commonwealth's milk industry. Indulac is currently the only entity authorized to process ultra-high temperature milk ("UHT milk"), a product that does not need to be refrigerated before it is opened. Id. Appellant PRDFA is an organization that represents Puerto Rico's dairy farmers, who sell their milk to all three processing entities. It initially intervened in 2005 in order to support the government defendants.

## A. Procedural Background

In 2004, Suiza and VTM brought a constitutional challenge to the then-existing regulatory structure of the milk industry.

Id. at 471. Suiza and VTM contended that ORIL's regulatory structure "precluded them from making a reasonable profit in their milk business" and constituted a confiscation of property in violation of the Takings Clause. Id.; see U.S. Const. amend. V. PRDFA entered the milk litigation in 2005 as a defendant-intervenor alongside ORIL. Indulac also entered the litigation as a defendant-intervenor.

On July 13, 2007, the district court issued a preliminary injunction ordering remedies in favor of Suiza and VTM. Vaquería Tres Monjitas, Inc. v. Laboy, No. 04-1840, 2007 WL 7733665, at *48 (D.P.R. July 13, 2007). That preliminary injunction ordered, among other things, that the Administrator of ORIL develop and implement "nondiscriminatory, rational and scientific regulatory standards that will allow him to determine costs and fair profits return for all the participants in the Puerto Rico regulated milk market."[1] Id. (emphasis added). In its initial attempt to satisfy this portion of the injunction, ORIL filed Price Order and Regulation No. 12 ("Regulation 12") with the court on July 23, 2008.

The filing of Regulation 12 started a new chapter. On one track, Suiza and VTM both filed prompt objections to Regulation 12, arguing that it did not constitute full compliance with the preliminary injunction. Those objections led to a series of post-

---

[1] Our 2009 decision upheld that injunction. See Vaquería Tres Monjitas, Inc., 587 F.3d at 488.

injunction compliance hearings that focused on the substance of ORIL's calculations underlying Regulation 12.

Immediately after ORIL filed Regulation 12 in July 2008, PRDFA also objected to the Regulation, though on different grounds than Suiza and VTM. In doing so it altered its posture and no longer supported ORIL's position. Specifically, PRDFA argued that Regulation 12 was "arbitrary and capricious" in that it forced the dairy farmers to sell their raw milk at an unfairly low price, and that it discriminated against the dairy farmers in favor of other players in the milk industry. In light of Suiza and VTM's then-pending objections, the government asked the district court to stay its consideration of PRDFA's objections.[2] The district court granted the government's motion and instructed PRDFA to "file their own constitutional claims as to the proposed Regulation No. 12" in a separate case.

As proposed, PRDFA filed a separate complaint as a plaintiff against ORIL in October 2008, alleging that Regulation 12 constituted a violation of its rights under both the Due Process and the Takings Clause. On May 20, 2010, the district court ruled that it would proceed with PRDFA's case only after the original case, this case, was in the permanent injunction phase. PRDFA has

---

[2] In light of PRDFA's objections, the government also convened a committee, comprised of representatives from PRDFA and ORIL, tasked with designing and proposing various amendments to Regulation 12.

amended its complaint twice, adapting its allegations as Regulation 12 was amended following various court actions and committee recommendations. The PRDFA's First Amended Complaint was filed on December 21, 2009 and the second on December 26, 2013. That case, No. 08-2191, remains pending before the district court.

B. Settlement Agreement and Related Events

For several years after ORIL first filed Regulation 12, the parties continued to dispute whether the Regulation complied with the preliminary injunction. The district court held dozens of hearings on the matter, considering a variety of technical regulatory issues, and ultimately rejected a total of nineteen calculation proposals offered by ORIL. At several points, the district court evinced frustration with what it believed were the government's efforts "to evade compliance" with the previously ordered injunctive relief.

In September 2013, the long period of compliance hearings and filings regarding Regulation 12 came to a head. On September 23, the district court issued an Opinion and Order which, among other things, held the government defendants in contempt for continued attempts to evade compliance with the 2007 preliminary injunction. Vaquería Tres Monjitas, Inc. v. Comas, ___ F. Supp. 2d ___, 2013 WL 5913114 (D.P.R. Sept. 23, 2013). The Order set a date for a hearing on the matter of a contempt fine and related matters, as well as a date for a Permanent Injunction Hearing. Id. at *54,

*56. In a footnote, the court "strongly recommend[ed] that the parties utilize the time between the instant Opinion and Order and the Permanent Injunction Hearing to reach an extrajudicial resolution to the instant controversy." Id. at *48 n.35.

At the scheduled contempt hearing on October 28, 2013, counsel for Suiza announced that the parties had, in principle, reached a settlement agreement late the night before. The Agreement purported to resolve all of the pending disputes between Suiza, VTM, and ORIL. The parties requested that the hearing be continued until the next day so that they could finalize and sign the Agreement before filing it with the court for its review. The court granted that request, and the very next day, October 29, the court held a hearing at which ORIL, Suiza, and VTM filed the now-executed Agreement in open court for the court's approval. At that hearing, the district court noted that it "thought that the solution [to the litigation] should have been made by the parties," and noted approvingly that "the parties have the agreement, and it is not a Court-imposed agreement."

PRDFA was not involved in the negotiations that led to the Agreement, nor had PRDFA's counsel even seen it at the time it was filed in the district court. During the October 29 hearing, PRDFA's counsel informed the court that he believed PRDFA's companion case would move forward following the approval of the Agreement, but that he could not take a full position until he had

read the Agreement. The court instructed PRDFA's counsel to review the Agreement to determine "to what extent" it affected PRDFA's pending case, and to advise the court of "what [wa]s left" in that case. PRDFA's counsel agreed.

The district court then stated: "This [Agreement] will be filed tonight, and the Court will examine it, and potentially produce a sentence based on all of the covenants stated herein. All of them. All. This is my judgment. . . . [T]he Court will incorporate as a judgment all the terms and conditions that are stated herein." The court then allowed both PRDFA and Indulac fifteen days to advise the court as to how the Agreement would affect them; it also expressly stated that those entities "cannot nullify this agreement."

On November 6, 2013, PRDFA filed a Motion to Reject the Final Settlement Agreement, raising takings and due process objections. That motion was never addressed directly by the district court.

On November 7, the district court issued an Amended Order and Judgment, accepting and incorporating the entire Agreement into a judgment. The Order expressly noted that the Agreement "does not include" PRDFA, and that PRDFA accordingly "may proceed with their litigation filed under Civil No. 08-2191."

Later that same day, PRDFA filed a motion to stay the judgment, which was granted in part. Specifically, the court

granted a stay only as to the portions of the Agreement that altered the milk pricing formula, which altered the dairy farmers' previous per-quart compensation. The court ordered that the pricing status quo -- which was at the heart of PRDFA's objections -- would be preserved until PRDFA was granted a hearing on the matter, and then scheduled that hearing for November 22, 2013. While the stay was in place, PRDFA filed at least two motions challenging the Agreement and opposing Suiza's arguments in favor of lifting the stay.

At the November 22 hearing, PRDFA voiced its objections to the Agreement at length. Its primary argument, also advanced in an earlier motion opposing the Agreement, was that the Agreement would lower the dairy farmers' profit margins by at least $0.12 per quart of milk, from $0.90 to $0.78 per quart, and that reduction would constitute an unconstitutional taking and a violation of procedural and substantive due process.

Second, PRDFA argued that the way the Agreement was structured would bar the district court from granting PRDFA relief even if it prevailed as plaintiff on the merits in its pending case, No. 08-2191. More specifically, PRDFA's second argument asserted three propositions. First, the Agreement provides that the price of milk paid by consumers will not increase for the next four years "unless the present market conditions change substantially." Second, Suiza and VTM's profit margins are

inversely related to those of the dairy farmers; without a rise in prices at the consumer level, PRDFA argued, it is unavoidable that as Suiza and VTM's margins increase, the farmers' margins will decrease. Finally, the Agreement provides that any later changes to Regulation 12 (and, accordingly, to Suiza and VTM's profit margins) require "the unanimous vote of designated industry representatives from all industry sectors." (emphasis added). The combined effect of these three conditions, PRDFA argued, was that even if PRDFA were able to show constitutional violations in its companion case, the district court would be unable to grant it relief via restored higher profit margins in light of the Agreement's restriction on amending Regulation 12 without unanimous consent from industry actors.

At the November 22 hearing, the district court flatly rejected the contention that the Agreement so limited its power to grant relief in the companion case. The court told PRDFA's counsel that the companion case "is going to be heard on the merits, and if the Court finds that you warrant a remedy, the Court gives you the remedy, whether it is in [a] subsidy or whether it is in dollars and cents." After the hearing, the court lifted the partial stay, having concluded that "the farmers will not be losing, at this time, the egregious amounts alleged as a consequence of the

Settlement Agreement."[3] The court went on to note that it would "provide expedited hearings as soon as the parties are ready" in PRDFA's companion case.

In the days and weeks following the hearing, PRDFA and the other parties continued to submit informative motions as to the actual effects of certain portions of the Agreement. In particular, the district court ordered ORIL to provide additional briefing to confirm that under the Agreement the dairy farmers would in fact receive 80 cents per quart of milk. This order arose because PRDFA continued to allege to the court that under the Agreement, the farmers' per quart compensation would drop precipitously.

On December 30, 2013, the district court issued an Order denying a series of pending motions; the Order specifically denied Indulac's motion to amend or alter the judgment, and in a footnote, it noted that Indulac "mirrors arguments also alleged by the PRDFA." The Order also noted that it would deal with PRDFA's substantive objections separately in PRDFA's companion case. The district court did not disturb its approval of the Agreement.

While this appeal was pending, PRDFA filed another motion to stay the district court's judgment. On February 28, 2014,

---

[3] PRDFA filed an emergency motion for stay pending appeal in this court. On November 26, 2013, we entered an order denying that motion "[b]ecause the PRDFA has failed to elucidate clearly a likelihood of success on the merits or looming irreparable harm."

before the March 4 oral argument before this court, the district court issued an order denying that motion. In that order, the district court referred back to the November 22, 2013 hearing, and noted that the Agreement posed "no irreparable harm" to the dairy farmers. The court held:

> Because the Final Settlement Agreement ending the instant case guarantees a net payment of $0.80 per quart of milk to the farmers, and the Governor has agreed to finance any deficiency short of $0.80 per quart of milk, the PRDFA has no irreparable damages warranting a stay pending appeal.
>
> Finally, there is no likelihood of success as there are no damages. Nken v. Holder, 556 U.S. [418,] 433-34 [(2009)].

The court went on to hold that the government's public policy regarding the milk industry is "reasonable."

II.

PRDFA's argument before us has two primary components.[4] The first is procedural: PRDFA argues that the district court did not grant it a fair opportunity to be heard on its objections to the Agreement. Second, PRDFA reiterates its substantive objections to the approval of the Agreement on takings and due process grounds.

To be clear, this is not a class action, and there are no specific rule-based requirements here as to pre-settlement

---

[4] We reject the separate line of argument presented by Suiza that we lack jurisdiction to hear this appeal. See Indus. Commc'ns & Elecs., Inc. v. Town of Alton, N.H., 646 F.3d 76, 79-80 (1st Cir. 2011).

hearings, as there are in Federal Rule of Civil Procedure 23(e). Nonetheless, third party intervenors who object that they are adversely affected by a settlement between a government entity and a private party should be provided with adequate notice and an opportunity to have these objections heard. See United States v. Comunidades Unidas Contra La Contaminacion (CUCCo), 204 F.3d 275, 278 (1st Cir. 2000). An intervenor lacks the power to block a consent decree merely by withholding its consent. Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland, 478 U.S. 501, 529 (1986). An objecting intervenor is entitled "to present evidence" and "have its objections heard." Id.

The key consideration in this type of process inquiry is whether there has been "a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions." United States v. Cannons Eng'g Corp., 899 F.2d 79, 94 (1st Cir. 1990) (quoting Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir. 1988)) (internal quotation mark omitted). An intervenor's right to be heard, however, does not translate into a right to block a settlement. Local 93, 478 U.S. at 529.

It is true that the district court entered the Agreement on November 7 without first hearing PRDFA's objections. But it is also true that the court immediately stayed its order in light of the objections and gave PRDFA (and Indulac) ample opportunity to review the Agreement and to be heard. The court accepted filings

-- including an affidavit from PRDFA's expert -- and held a hearing. The November 22 hearing, along with the several motions PRDFA filed in the district court in the weeks before, was adequate.

PRDFA argues to us it was entitled to a live hearing to present witnesses, but it did not expressly request an evidentiary hearing before the district court and the court had no obligation to hold one in any event. See CUCCo, 204 F.3d at 279 (concluding that "there can be no unconditional right to an evidentiary hearing" as to the merits of a settlement agreement demanded by a third party intervenor, because to "allow evidentiary hearings on the call of any party allowed to intervene would delay, complicate, and perhaps jeopardize the timely resolution of the issues"). The district court was equipped with the evidence contained in PRDFA's filings at the November 22 hearing. PRDFA's procedural rights as an objecting intervenor were not violated here.

We turn to PRDFA's second argument, that the district court erred in its approval of the Agreement. Approval of a consent decree is "committed to the trial court's informed discretion," Cannons Eng'g Corp., 899 F.2d at 84, and our review is accordingly deferential:

> Unless the objectors can demonstrate that the trier made a harmful error of law or has lapsed into "a meaningful error in judgment," Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988), a reviewing tribunal must stay its hand. The doubly required deference

> -- district court to agency and appellate court to district court -- places a heavy burden on those who purpose to upset a trial judge's approval of a consent decree.

Id. Woven into the abuse of discretion standard here is a "strong public policy in favor of settlements, particularly in very complex and technical regulatory contexts." CUCCo, 204 F.3d at 280. We cannot conclude that the district court abused its discretion in approving the Agreement.

As to the actual effects of the Agreement on the interests of the PRDFA, the court expressly noted that PRDFA was not bound by the Agreement and allowed PRDFA's companion case to move forward. Cf. Local No. 93, 478 U.S. at 529 ("A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor.").

In addition, the district court has retained jurisdiction over this case and the Agreement for compliance purposes. We understand the district court's order as a retention of jurisdiction to modify the Agreement if the evidence in the companion case later establishes the constitutional infirmity of any of the Agreement's effects on PRDFA. Suiza conceded as much at oral argument: it stated that in the event PRDFA prevailed on the merits of its companion case, the structure of the Agreement did not bar the court from granting relief. We agree.

III.

The judgment of the district court is affirmed.