**PUERTO RICO DAIRY FARMERS ASSOCIATION, Plaintiff(s),**

v.

**Myrna Comas PAGAN, in her official capacity, as the Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico; and Edmundo Rosaly, Esq., in his official capacity, as the Interim Administrator of the Office of the Milk Industry Regulatory Administration for the Commonwealth of Puerto Rico; Defendant(s).**

Civil No. 08–2191 (DRD).

United States District Court, D. Puerto Rico.

Signed Aug. 8, 2014.

Jorge F. Blasini–Gonzalez, Juan Carlos Deliz, William A. Graffam, Jimenez, Graffam & Lausell, Juan M. Frontera–Suau, Ufret & Frontera Law Firm, San Juan, PR, for Plaintiff(s).

Yassmin Gonzalez–Velez, Gonzales Velez Law Offices, Edward W. Hill–Tollinche, Hill & Gonzalez, PSC, Gerardo A. De–Jesus–Annoni, Joseph G. Feldstein–Del Valle, Department of Justice, San Juan, PR, for Defendant(s).

## OPINION AND ORDER

### RE: INJUNCTION AND DECLARATORY RELIEF

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are: (a) Defendants' *Motion to Dismiss Counts One, Two and Three of the Puerto Rico Diary Farmers Association's Second Amended Complaint for Lack of Standing Pursuant to Fed.R.Civ.P. 12(b)*, Docket No. 35; and (b) Plaintiff's *Opposition to Government Defendant's Motion to Dismiss for Lack of Standing Filed at Docket No. 35*, Docket No. 38. For the reasons set forth below, the motion to dismiss is DENIED.[1]

### Jurisdiction

This Court has subject matter jurisdiction to entertain actions filed under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as well as claims under 42 U.S.C. § 1983 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Docket No. 34, page 3. Plaintiff is also asserting Defendants violated their members' rights under the United States Constitution's Fifth Amendment's Takings Clause and the Fourteenth Amendment's Due Process and Equal Protection Clauses. *Id.* Finally, Plaintiff moves this Court to exercise supplemental jurisdiction over the claims based on the laws of the Commonwealth of Puerto Rico pursuant to 28 U.S.C. § 1367 as they are related to the claims upon which this Court has original jurisdiction. *Id.*

In addition to requesting compensation for alleged constitutional violations that began in 2005, Plaintiff is also requesting injunctive and declaratory relief. Docket No. 34, page 21, ¶ 123 and page 29. Plaintiff requests this Court to issue an order forcing Defendants to refrain from enforcing Price Orders and Regulations that: (1) do not allow the dairy farmers to recover their costs for producing raw milk; (2) do not allow the dairy farmers to recover a reasonable rate of return; (3) deprive the dairy farmers of their property; (4) violate the clear mandates of the Court's Amended Opinion and Order issued on July 13,

---

1. The Court wishes to make pellucid that it will not entertain any issue direct, indirect or camouflaged which attempts in any way to alter the Settlement Agreement entered in the lead case Civil No. 04–1840(DRD), which is now final and unappealable. *See Puerto Rico Dairy Farmers Association, et al. v. Comas Pagán, et al.,* 748 F.3d 13 (1st Cir.2014); *Vaquería Tres Monjitas, Inc., et al. v. Comas Pagán, et al.,* 748 F.3d 21 (1st Cir.2014).

2007 in the lead case; (5) violate the clear mandate of Act 34 of June 11, 1957, 5 L.P.R.A. §§ 1092–1125 (2005 & Supp. 2008); and (6) are highly discriminatory, not rational and not scientifically based. Docket No. 34, page 29, ¶ (i)-(vi). Lastly, Plaintiff requests this Court to order Defendants to "create a mechanism for the dairy farmers to recover the losses they have experienced on account of [Defendants'] unconstitutional actions and decisions herein challenged." Docket No. 34, page 29, ¶ vii.

## Introduction

Puerto Rico Dairy Farmers Association ("PRDFA"), filed its *Second Amended Complaint* on December 26, 2013 which contained six causes of action. Docket No. 34. Essentially, PRDFA alleged that the Final Settlement Agreement and Memorandum of Understanding Between the Parties in the lead case ("Settlement Agreement")[2] violated the United States Constitution, the Court's Amended Opinion and Order[3] issued on July 13, 2007, and Act 34.[4] Docket No. 34, page 2. PRDFA alleged that the price set in the Settlement Agreement for the raw milk it produces caused a decrease in the diary farmers' compensation that was "not based on any scientific, rational, or non-discriminatory standard." *Id.* at page 18, ¶ 97.

## Procedural Background

### A. Parties

Plaintiff PRDFA is an association that "comprises all licensed diary farmers in Puerto Rico and the one who represents their rights and interests." Docket No. 38, page 6. Amicus Curiae Vaquería Tres Monjitas, Inc. ("VTM") and Intervenor Suiza Dairy Inc. ("Suiza") are the only two fresh milk processors in Puerto Rico (collectively "the Processors"), plaintiffs in the lead case. Their business consists of purchasing raw milk from local dairy farmers and converting it into drinkable fresh milk for sale to consumers. *Vaquería Tres Monjitas v. Irizarry*, 587 F.3d 464, 468 (1st Cir.2009). PRDFA represents the producers of the raw milk processed by the Processors and Indulac, albeit Indulac was not a plaintiff in the lead case. *Id.*

Edmundo Rosaly, Esq. is being sued in his official capacity as the current Interim Administrator of the Office of the Milk Industry Regulatory Administration for the Commonwealth of Puerto Rico ("ORIL" by its Spanish acronym). ORIL is a subdivision of Puerto Rico's Department of Agriculture whose current secretary, Myrna Comas–Pagan, is also a named defendant in her official capacity. ORIL is a regulatory agency which oversees the milk industry in Puerto Rico and sets both a maximum price for the sale of milk to consumers and a minimum price for the purchase of raw milk from dairy farmers by the Processors. *Irizarry*, 587 F.3d at 469.

### B. Background of this Litigation

This action is a member case of a highly-litigated suit between the Processors and different government entities which regulate the milk industry in Puerto Rico. While the lead case has settled and the matter is final, it is imperative to provide some information on it to provide context for the current suit.

#### 1. Lead Case

The Processors sued the regulating government entities and challenged the constitutionality of the laws and regulations that governed the milk industry in Puerto Rico.

---

2. Civil No. 04–1840(DRD), Docket No. 2322.

3. Civil No. 04–1840(DRD), Docket No. 480.

4. Act 34 of June 11, 1957, 5 L.P.R.A. §§ 1092–1125 (2005 & Supp.2008).

*Vaquería Tres Monjitas, Inc. v. Laboy,* No. 04–1840, 2007 WL 7733665 at *1 (D.P.R. July 13, 2007). PRDFA was joined as a defendant for appeal purposes only.[5] *Irizarry,* 587 F.3d at 468. Another of the defendants was the Industria Lechera de Puerto Rico, Inc. ("Indulac"). *Id.* Indulac purchases the raw milk left over from the Processors after they meet the demand for fresh milk ("surplus milk"). *Id.* at 469. Indulac was brought into the suit because ORIL required the Processors to purchase all of their milk from the dairy farmers at a price significantly higher than ORIL allowed the Processors to sell the surplus milk to Indulac. *Id.* "Indulac is the sole entity in Puerto Rico authorized to process ultra high temperature milk ('UHT milk'), a type of milk that does not require refrigeration prior to opening and competes directly with the fresh milk produced by [the Processors]." *Id.* at 468. "Essentially, by mandating that [the Processors] pay a high price for raw milk and then requiring them to sell the surplus . . . to Indulac at a substantially lower price, ORIL created a scheme where [the Processors] were forced to subsidize Indulac, their competitor." *Id.* at 469.

After a long litigation, the Processors, ORIL, and the Puerto Rico Secretary of Agriculture reached an agreement that resulted in the Settlement Agreement. However, neither PRDFA nor Indulac were a part of the settlement negotiations. Docket No. 34, page 17, ¶ 90. The Settlement Agreement contained a new Price Order and Regulation No. 12 which "[took] more than sixteen cents per quart from the dairy farmers, and redistribute[d] it to the [Processors]." *Id.* at ¶ 93–94. "The Regulation forces the surplus milk to be sold at the same price as fresh and Indulac's UHT milk." *Id.* at page 18, ¶ 95. PRDFA filed a Motion to Reject the Settlement Agreement because of the effects the Settlement Agreement would have on the dairy farmers. *Id.* at ¶ 99.

The Court approved and incorporated all of the covenants in the Settlement Agreement in its Amended Order and Judgment dated November 7, 2013.[6] Docket No. 34, page 17, ¶ 100. The Court then issued a partial stay pending appeal and ordered the parties of the Settlement Agreement to show cause why the stay should not continue beyond November 22, 2013. *Id.* at ¶ 101–02. During an argumentative hearing on the continuation of the stay, Suiza stated to the Court that the dairy farmers would not lose the amounts that PRDFA alleged. *Id.* at page 19 ¶ 106–07. Suiza's argument was based on the proposition that the Settlement Agreement guarantees 80 cents per quart to the dairy farmers. *Id.* at ¶ 107.[7] Thus, the Court dissolved the stay. *Id.* at ¶ 108. PRDFA then filed a Renewed Motion to Stay. *Id.* at ¶ 110. In response, the Court issued an Order requiring ORIL and the Secretary of Agriculture to confirm to the Court that the net payment of 80 cents per quart that was to be paid to the dairy farmers was on a year-to-year basis based on the final milk liquidation calculated by ORIL every 15 days. *Id.* at ¶ 111. ORIL and the Secretary of Agriculture filed a motion in compliance with the Court order. *Id.* at ¶ 112. *See also Vaquería Tres Monjitas, Inc. v. Comas,* 992 F.Supp.2d 39 (D.P.R.2013);

---

5. The Court notes that both PRDFA and Indulac were interveners in the lead case with leave of the Court due to their roles in the milk industry in Puerto Rico.

6. *See* Docket No. 2351 at Civil No. 04–1840(DRD).

7. Although Suiza's averment is cogent and persuasive, based on the stipulation ending the milk processor's case, it is subject to proof which the Court cannot entertain at this stage.

*Vaquería Tres Monjitas, Inc. v. Comas,* 5 F.Supp.3d 179, 2014 WL 1202150 (D.P.R. February 28, 2014).

### 2. *Procedural History*

As stated above, PRDFA filed its *Second Amended Complaint* on December 26, 2013 that contained six causes of action. In the section titled "Factual Background Leading to ORIL's Price Order and Regulation," PRDFA alleged that ORIL and the Secretary of Agriculture did not comply with the Court's order dated November 27, 2013,[8] wherein the Court ordered ORIL and the Secretary of Agriculture for confirmation that the dairy farmers would receive the 80 cents per quart described above. Docket 34, page 19, ¶ 111. Although ORIL and the Secretary of Agriculture filed a motion titled "motion in compliance with the Court order," PRDFA alleged they did not in fact comply in confirming the farmers would receive no less than 80 cents per quart. *Id.*[9]

PRDFA further avers that "... while testifying before the Puerto Rico House of Representatives, ORIL's Administrator admitted that the liquidation submitted to the Court in their compliance motion was tailored by the Secretary of Agriculture's counsel (Mr. Gerardo de Jesús Annoni)." Docket No. ·34, page 19, ¶ 114. ORIL's administrator also testified that because of the Settlement Agreement, the dairy farmers' compensation "was reduced and they would not receive the alleged agreed upon 80 cents per quart." *Id.* at ¶ 115. The bi-weekly liquidation issued on December 18, 2013, with a ten cent per quart contribution by the government, produced an average price of 81.5 cents per quart. *Id.* at

¶ 116–17. However, "there has been no guarantee that the dairy farmers will continue to receive the government's contribution to make up what was taken from the dairy farmers under the Price Order and Regulation filed with the Settlement Agreement." *Id.* at ¶ 118.[10]

Defendants Myrna Comas Pagán and Edmundo Rosaly, Esq. ("Defendants") filed jointly a *Motion to Dismiss Counts One, Two[,] and Three of the Puerto Rico Diary Farmers Association's Second Amended Complaint for Lack of Standing Pursuant to Fed.R.Civ.P. 12(b).* Docket No. 35. Defendants argue PRDFA does not have standing to bring the immediate action as "associations are not entitled to represent individuals that claim to have suffered a constitutional or civil injury under Section 1983 case law, nor are they entitled to seek recovery of damages or losses on behalf of those individuals." *Id.* at page 2. The allegation is grounded on the argument that "the claim asserted [and] the relief requested requires the participation of individual members in the lawsuit." *Id.* Thus, the Defendants argue Counts I, II, and III of the *Second Amended Complaint* should be dismissed. *Id.*

### Applicable Law and Discussion

After careful review of all the pleadings, the Court disagrees with the dismissal request made by the Defendants for the reasons stated below.

### A. Standard for Motion to Dismiss

The main thrust of the claim is whether the Defendants violated PRDFA's mem-

---

8. Docket No. 2399, Civil No. 04–1840(DRD).

9. Again PRDFA's allegations, as that of Suiza's, are subject to proof.

10. This averment made before the Puerto Rico House of Representatives is also subject

to proof as to veracity which the Court only mentions but is impeded from accepting its veracity. As the Court is entertaining the instant matter under the Rule 12(b)(6) standard, see *infra.* See discussion and analysis below.

bers' constitutional and civil rights through the Settlement Agreement, Price Orders and Regulations. However, the issue to be currently resolved here is when and how an association meets the threshold requirement of standing enabling the association to sue on behalf of its individual members. Whether a party has standing to bring forth an action is a threshold issue. *Horne v. Flores,* 557 U.S. 433, 445, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (stating "this is the threshold question in every federal case"). "It is presumed that a cause lies outside [the] limited jurisdiction [of the federal courts], and the burden establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omitted). The standard for a motion to dismiss for want of standing is the same as that "traditionally applied to motions to dismiss made under [Federal Rule of Civil Procedure] 12(b)(6).[11]" *U.S. v. AVX Corp,* 962 F.2d 108, 114 (1st Cir. 1992).[12] Thus, when examining a motion

to dismiss for want of standing, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth,* 422 U.S. at 501, 95 S.Ct. 2197. A court must reject all "unsupported conclusions or interpretations of law." *Stein v. Royal Bank of Canada,* 239 F.3d 389, 392 (1st Cir.2001).

**B. Standard for Standing Threshold Requirement**

"The Constitution limits the judicial power of the federal courts to actual cases and controversies." *Katz v. Pershing, LLC,* 672 F.3d 64, 71 (1st Cir.2012) (Selya, J.). An actual case or controversy exists only when the party asserting federal court jurisdiction establishes "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends." *Id.* (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The standing inquiry is claim specific: "a plaintiff must have

---

**11.** Rule 12(b)(6) governs motions to dismiss for failure to state a claim. To survive a motion to dismiss for failure to state a claim, the "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Katz v. Pershing, LLC,* 672 F.3d 64, 73 (1st Cir.2012) (Selya, J.) (citations omitted). "The complaint must include 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir.2011)). "If the factual allegations in the complaint are too meager, vague or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Id.* (quoting *S.E.C. v. Tambone,* 597 F.3d 436, 442 (1st Cir.2010)).

**12.** *See also McInnis–Misenor v. Maine Med. Ctr.,* 319 F.3d 63, 67 (1st Cir.2003) (applying

Rule 12(b)(6) standard for motion to dismiss for lack of standing and noting that "[n]ormally on a Rule 12(b)(6) motion to dismiss, only the complaint is reviewed. However, where standing is at issue, it is within the trial court's power to allow or to require the plaintiff to provide by affidavit or amended complaint further particularized allegations of fact deemed supportive of plaintiff's standing.") (internal citations and quotations omitted); *Harold H. Huggins Realty, Inc. v. FNC, Inc.,* 634 F.3d 787, 795 n. 2 (5th Cir.2011) (finding that "unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule (b)(6)."); and *Fryzel v. Mortg. Elec. Registration Sys., Inc.,* No. 10–352 M, 2011 WL 9210454, at *7 (D.R.I. June 10, 2011).

standing to bring each and every claim that she asserts." *Id.* (citing *Pagán v. Calderón,* 448 F.3d 16, 26 (1st Cir.2006)). **"To satisfy the personal stake requirement, a plaintiff must establish each part of a familiar triad: injury, causation, and redressability."** *Id.* (Emphasis ours).

■ Generally, a plaintiff must assert "his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties;" notwithstanding an association may still have standing solely as the representative of its members even in the absence of injury to itself. *Warth,* 422 U.S. at 499, 511, 95 S.Ct. 2197. The United States Supreme Court ("Supreme Court") has recognized that:

> "an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

The three prong criteria for standing must be fully satisfied, however, the third prong is a prudential one. *United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.,* 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). "[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." *Warth,* 422 U.S. at 515, 95 S.Ct. 2197. If the association is seeking "a declaration, injunction, or some other form of prospective relief," it can be presumed

that if it is granted, it will benefit the members of the association actually injured. *Id.*

## C. PRDFA Members Posses Standing to Sue in Their Own Right

■ To satisfy the first prong of the *Hunt* test, PRDFA need only establish that **any** of its members would otherwise have standing to bring forth this suit. 432 U.S. at 343, 97 S.Ct. 2434. According to *Warth,* "[t]he association must allege that its members, or **any one of them,** are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." 422 U.S. at 511, 95 S.Ct. 2197. In *Warth,* the petitioners were various organizations and individuals who brought suit against a town and members of its zoning, planning, and town boards. *Id.* at 493, 95 S.Ct. 2197. The petitioners' complaint alleged that the town's zoning ordinance had the purpose and effect of excluding people of low and moderate income from residing in the town. *Id.* at 495, 95 S.Ct. 2197. The Supreme Court found that Home Builders, one of the petitioners, did meet the first prong as it alleged that the zoning restrictions, coupled with certain town officials' actions, had deprived some of its members of substantial business opportunities and profits. *Id.* at 514–15, 95 S.Ct. 2197.

■ Here, PRDFA alleged that its members are suffering immediate injury as a result of the Defendants' actions. "The dairy farmers have suffered and will continue to suffer substantial prejudice and worsening losses that would ultimately force the majority of the dairy farmers to close their operations...." Docket No. 34, page 2. Also, this Court agrees with PRDFA's argument in its Opposition to the Motion to Dismiss, "[f]aced with the

loss of their property, any of the members of PRDFA could have brought the action filed by PRDFA ... and would have alleged a particularized harm sufficient to give that member standing." *Id.* at page 5. Thus, the first prong of the *Hunt* test is satisfied.[13] 432 U.S. at 343, 97 S.Ct. 2434.

### D. The Interests PRDFA Seeks to Protect are Germane to its Purpose

PRDFA's purpose is significantly related to the interests it seeks to protect with this suit. In *Hunt,* the Washington State Apple Advertising Commission ("Respondent") sued the Governor of the State of North Carolina and was found to satisfy the second prong of the test. 432 U.S. 333, 97 S.Ct. 2434. Respondent was responsible for promoting and protecting Washington's apple industry, which included the promotion of Washington apples in both domestic and foreign markets. *Id.* at 336–37, 97 S.Ct. 2434. Washington established a mandatory inspection program for the apples and would grade them accordingly. *Id.* Washington's grades gained substantial acceptance in the trade and were the equivalent of, or superior to, the standards adopted by the United States Department of Agriculture ("USDA"). *Id.* The suit arose when North Carolina forbade apple containers sold or shipped into its state to bear any grade other than USDA's grade. *Id.* at 338–39, 97 S.Ct. 2434. The Supreme Court concluded that Respondent met the second prong of the test because Respondent's purpose was to protect and promote Washington's apple industry. *Id.* at 344, 97 S.Ct. 2434. Their purpose served a segment of the State's economic community, which were the primary beneficiaries of Respondent's activi-

ties, including the prosecution of that kind of litigation. *Id.*

PRDFA assimilates Respondent in the *Hunt* case. PRDFA "is the association of the milk sector that comprises all licensed dairy farmers in Puerto Rico and the [party] who *represents their rights and interests.*" Docket No. 38, page 6, (emphasis in original). PRDFA is seeking action by this Court "that would precisely protect these rights and interests." *Id.* For example, PRDFA seeks this Court to order Defendants to "refrain from enforcing Orders and Regulations that do not allow the dairy farmers to recover their costs for producing raw milk." Docket No. 34, page 29, ¶ 157. Thus, PRDFA's claims are germane to its purpose and the second prong of the *Hunt* test is satisfied. 432 U.S. at 343, 97 S.Ct. 2434.

### E. Neither the Claims Asserted nor the Relief Sought Require Individual Members' Participation in the Lawsuit

PRDFA's individual members do not need to participate in this suit. Defendants' main argument seems to be that PRDFA does not meet the third prong of the *Hunt* test. To support their argument, Defendants rely on *Warth* and *Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico,* 906 F.2d 25 (1st Cir.1990). Defendants argue that *Warth* drew a distinction between the types of relief an association may pursue on behalf of its members. Docket No. 35, page 6. Associations cannot bring suit for damages, according to the Defendants, because "damages [and losses] claims are not common to the entire membership, nor shared in equal degree. Docket No. 35, page 6. To the contrary, whatever injury may have been suffered is peculiar to the

---

**13.** Notwithstanding the instant case, PRDFA has frequently sought remedies in other state jurisdictions, with success, throughout the history of this case.

individual member concerned, and both the fact and extent of injury would require individualized proof." *Id.* (quoting *Warth,* 422 U.S. at 515–16, 95 S.Ct. 2197). "The crucial reason [in *Warth* ] for requiring the members' participation as parties must have been so that the members [rather than the association] could recover their own damages, should they prevail." *Id.* (quoting *Playboy Ent. Inc.,* 906 F.2d at 35). Defendants stressed that takings of property and due process cases are "essentially ad hoc, factual inquir[ies]" and so the participation of each member is needed. *Id.* (quoting *Rent Stabilization Ass'n of the City of N.Y. v. Dinkins,* 5 F.3d 591, 596 (2nd Cir.1993)).

PRDFA argued that *Warth* is distinguishable from the instant suit because in *Warth,* the damage claims, meaning that the PRDFA lacked relief. Docket No. 38, page 7. Here, PRDFA did allege injury that runs equally to all of its members. *Id.* PRDFA stressed that all dairy farmers receive a universal price for the raw milk they produce, so the damages would essentially be the same. *Id.* at page 8. Also, "the nub of PRDFA's claim depends on expert evidence as to what price at farm level should have been in order to cover costs and reasonable profit and not on evidence that may differ from member to member." *Id.* As such, PRDFA's members do not have to participate in the action. *Id.* This Court agrees and briefly explains.

As PRDFA asserted, "declaratory relief has been held to turn on a question of law which is not particular to each member of the association, and because the declaration applies equally to all members, there is no need for individual proof or participation." Docket No. 38, pages 8–9 (citing *Automobile Workers v. Brock,* 477 U.S. 274, 287, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986)). *See also Pharm. Care Mgmt.*

*Ass'n v. Rowe,* 429 F.3d 294, 307 (1st Cir.2005). Regarding the takings clause being fact-specific, the First Circuit determined in *Rowe* that "even though a takings inquiry is intensely fact specific and [the association] will be required to introduce proof of specific members' practices and effects of [the law] on specific [members] we see no reason that [the members] would be required to participate as parties in this litigation." 429 F.3d at 306.

Assuming *arguendo* that PRDFA does not satisfy the third prong, PRDFA would still have standing to bring this suit because the third prong is prudential. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,* 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). "[O]nce an association has satisfied *Hunt's* first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists it is difficult to see a constitutional necessity for anything more." *Brown Grp., Inc.,* 517 U.S. at 556, 116 S.Ct. 1529. " 'The general prohibition on a litigant's raising another person's legal rights' is a 'judicially-self imposed limi[t] on the exercise of federal jurisdiction,' not a constitutional mandate." *Id.* at 557, 116 S.Ct. 1529 (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Thus, the third prong focuses on matters of administrative convenience and efficiency. *Id.*

Certainly it is more convenient and efficient to address this controversy through the instant case, brought by PRDFA, instead of having dozens of separate cases being brought by each individual dairy farmer. Especially when, as argued by PRDFA and agreed to by this Court, all dairy farmers receive the same universal price for their raw milk. As this case is "a matter of *high* public interest," [14] dismiss-

---

**14.** *Vaquería Tres Monjitas, Inc. v. Comas,* 980 F.Supp.2d 65, 70 n. 2 (D.P.R.2013).

ing this case after six years of litigation would be anything but convenient or .efficient for this Court or the people of Puerto Rico.

As a final note, addressing the Defendants' argument regarding PRDFA's individual members receiving their due damages should they prevail, the Supreme Court dismissed that concern in *Brown Group, Inc.,* 517 U.S. at 556–57, 116 S.Ct. 1529. After finding that the third prong of the *Hunt* test was prudential, the Supreme Court did not want to "rob it of its value"[15] and acknowledged that the third prong may protect "against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury was claimed." *Brown Grp., Inc.,* 517 U.S. at 556, 116 S.Ct. 1529. But added that "these considerations are generally on point whenever one plaintiff sue[s] for another's injury." *Id.* at 556–57, 116 S.Ct. 1529.

Our ruling determines that the allegations as to PRDFA's standing reach the required threshold as to the individual members. The Court strongly reminds the parties that the instant Opinion and Order does not solve the case on the merits.

### Conclusion

In view of the foregoing, the Defendants' *Motion to Dismiss Counts One, Two and Three of the Puerto Rico Dairy Farmers Association's Second Amended Complaint for Lack of Standing Pursuant to Fed.R. Civ.P. 12(b),* Docket No. 35, is denied.

IT IS SO ORDERED.

---

15. *Brown Grp., Inc.,* 517 U.S. at 556, 116    S.Ct. 1529.